UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STACIE WILLIAMS,<br><br>    Plaintiff,<br><br>  v.<br><br>FEDERAL EXPRESS CORP.,<br><br>    Defendant. | CASE NO. C12-0348JLR<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

  Before the court is Defendant Federal Express Corporation's ("FedEx") motion for summary judgment. (Mot. (Dkt. # 16).) This is an employment discrimination case. Plaintiff Stacie Williams alleges that her former employer, FedEx, discriminated against her because of a disability. Ms. Williams was injured and took disability leave after her car was struck by a drunk driver, injuring her wrist and ankle. She was away from work for over two years, and while she was gone FedEx hired someone else to take her old job. Ms. Williams claims FedEx discriminated against her in violation of the Washington Law Against Discrimination ("WLAD"), RCW ch. 49.60. However, discovery has closed in

ORDER- 1

this matter and Ms. Williams has mustered virtually no evidence to support her claims. On the other hand, FedEx has come forth with evidence to rebut them. The court has considered the submissions of the parties, the record, and the governing law. Considering itself fully advised, and neither party having requested oral argument, the court GRANTS FedEx's motion for summary judgment.

## I. BACKGROUND

Ms. Williams worked as a "swing driver" for FedEx. (Pera Decl. (Dkt. # 17) Ex. 1 ("Williams Dep.") at 2.) A swing driver is a mail and package delivery driver that fills in on a FedEx delivery route when the regularly-assigned driver is absent. (*Id.* at 2-3.) A swing driver's daily work includes sorting packages, loading and unloading a delivery vehicle, delivering and picking up packages, driving a delivery vehicle, and completing paperwork. (*Id.* at 3.)

Ms. Williams took medical leave from her job at FedEx after she injured her wrist and ankle in a non-work-related car accident on August 12, 2006. (Williams Dep. at 33-34.) FedEx approved her for medical leave two days later. (Watson Decl. (Dkt. # 27) ¶ 11.) In accordance with FedEx's medical leave policy, FedEx notified Ms. Williams that it could hire someone else to replace her position after 90 days of medical leave, and further that the maximum duration of medical leave was 30 months. (*Id.*) Ms. Williams was already aware of these provisions because she had previously taken medical leave on 10 different occasions, three of which were for periods of over 90 days. (*Id.* ¶ 9.)

Ms. Williams' leave lasted for almost three years. She took a long time to recover from her injuries and underwent multiple corrective surgeries. (Williams Dep. at 33-34.)

ORDER- 2

After 90 days of leave, FedEx notified her by letter that, per FedEx's leave policy, FedEx could hire someone to replace her in order to maintain operational efficiency and serve customers. (*Id.* at 40-41.) After 27 months of leave, FedEx notified Ms. Williams by letter that she was approaching the maximum duration of leave, which she would reach on February 21, 2009, and that FedEx would assist her in locating another position within the company. (*Id.* at 98-99.) She was also informed that if she did not locate another position within the company by the end of her 30-month leave period, she would be terminated. (*Id.*)

Ms. Williams attempted to find another job within the company but was ultimately unsuccessful. On January 14, 2009, her doctor released her to return to work "full duty with no restrictions." (Watson Decl. ¶ 16.) Her former position was no longer available, so she applied to be a "Dangerous Goods Agent." (Williams Dep. at 75.) She interviewed for the position and was offered a job, but she declined. (*Id.*) Ms. Williams claims that she declined the job because she was unable to run and she believed the job required running. (*Id.* at 169 ("Q: What disability did you believe you had as of March 23rd of 2009? A: A foot, my foot disability. Q: All right. What were you not able to do because of your foot? A: Run. Q: Anything else? A: That's it.").) However, running is not a requirement of any job at FedEx and, indeed, is against FedEx safety rules. (Hansen Decl. ¶ 7; Wilhelme Decl. ¶ 13-14.) FedEx terminated Ms. Williams' employment on March 2, 2009, roughly one week after her 30-month maximum leave period expired. (Williams Dep. at 163-64.)

Ms. Williams alleges that her termination resulted from disability discrimination and brought two claims against FedEx in King County Superior Court for (1) "Failure to Provide Reasonable Accommodation," and (2) "Wrongful Termination." (Compl. (Dkt. # 1-1) ¶¶ 4.1-5.2.) FedEx removed the case to this court. (Not. of Removal (Dkt. # 1).) Discovery is complete and FedEx now moves for summary judgment.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence is such that reasonable persons could disagree about whether the facts claimed by the moving party are true. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983).

> [T]he issue of material fact required . . . to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.

*First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

1  The court may not weigh evidence or make credibility determinations in analyzing a
2  motion for summary judgment because these are "jury functions, not those of a judge."
3  *Liberty Lobby*, 477 U.S. at 249-50.
4      The moving party bears the initial burden of showing there is no genuine issue of
5  material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S.
6  at 323. If the moving party meets his or her burden, the non-moving party "must make a
7  showing sufficient to establish a genuine dispute of material fact regarding the existence
8  of the essential elements of his case that he must prove at trial." *Galen*, 477 F.3d at 658.
9  Here, Ms. Williams has the burden of proof at trial on all of her claims, so FedEx does
10 not need to make an affirmative showing negating her case before summary judgment is
11 appropriate. Instead, FedEx needs to show only that there is no evidence to support Ms.
12 Williams' claims. *Celotex*, 477 U.S. at 325.
13 **B.    The WLAD and its Burden-Shifting Framework**
14      Both of Ms. Williams' claims are under the WLAD. The WLAD prohibits
15 employers from discriminating against or discharging their employees because they are
16 disabled. RCW 49.60.180. Washington courts analyze WLAD claims on summary
17 judgment using the burden-shifting framework established in *McDonnell Douglas Corp.*
18 *v. Green*, 411 U.S. 792 (1973). *Domingo v. Boeing Employees' Credit Union*, 98 P.3d
19 1222, 1225 (Wash. Ct. App. 2004) (citing *Johnson v. Dep't of Social and Health Servs.*,
20 907 P.2d 1223, 1231-32 (Wash. Ct. App. 1996)). Under this framework, the plaintiff has
21 the initial burden of proving a prima facie case of employment discrimination. *Id.* The
22 elements of a prima facie case vary with the particular form of discrimination alleged.

ORDER- 5

*See Callahan v. Walla Walla Housing Auth.*, 110 P.3d 782, 786 (Wash. Ct. App. 2005). Once the plaintiff establishes a prima facie case, an inference of discrimination arises. *Domingo*, 98 P.3d at 1225. In order to rebut this inference, the employer must present evidence that it had a legitimate nondiscriminatory reason for its actions. *Id.* The burden then shifts back to the plaintiff to show that the employer's proffered reason is a pretext for discrimination. *Id.* If a plaintiff cannot establish specific and material facts to support each element of the prima facie case, or if the plaintiff cannot present evidence that the defendant's reasons are untrue or mere pretext, the defendant is entitled to judgment as a matter of law. *Id.* If, on the other hand, the evidence could support reasonable inferences either way, the case should go to trial. *Callahan*, 110 P.3d at 786.

**C.     Failure to Provide Reasonable Accommodation**

Under this approach, FedEx first moves for summary judgment with respect to Ms. Williams' reasonable accommodation claim. Under the WLAD, an employer has a duty to reasonably accommodate a worker with a disability unless the accommodation would be an undue hardship. *Wade v. Premera Blue Cross*, No. CV-10-217-RMP, 2012 WL 12790, at *9 (E.D. Wash. Jan. 4, 2012) (citing *Hines v. Todd Pac. Shipyards Corp.*, 112 P.3d 522, 530 (Wash. Ct. App. 2005)). To make out a prima facie case of discrimination based on failure to provide a reasonable accommodation, a plaintiff must establish four elements: (1) she had a sensory, mental, or physical abnormality substantially limiting her ability to perform the job; (2) she was qualified to perform the essential functions of the job; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the

ORDER- 6

employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality. *Id.* (citing *Townsend v. Walla Walla Sch. Dist.*, 196 P.3d 748, 752 (Wash. 2008)).

Here, the court focuses on element (3)—whether Ms. Williams gave FedEx notice of her disability and its substantial limitations. An employer's duty to reasonably accommodate a disability does not arise until the employer is aware of the employee's disability and its corresponding physical limitations. *Goodman v. Boeing Co.*, 899 P.2d 1265, 1269 (Wash. 1995); *Snyder v. Med. Serv. Corp. of E. Wash.*, 35 P.3d 1158, 1162 (Wash. 2001). The employee bears the burden of giving the employer notice of the disability, and, importantly, the employer does not have an investigatory duty to question any employee that it suspects is disabled. *Goodman*, 899 P.2d at 1269. Indeed, the employer has no duty to inquire about an employee's disability until the employee has initiated the process by giving the employer notice of the disability and its physical limitations. *Id.*

Under Washington law, to establish that an employer has notice of the employee's disability, the employee must produce evidence that the employer knew or had reason to know that the employee had a "serious medical condition." *Hume v. Am. Disposal Co.*, 880 P.2d 988, 996 (Wash. 1994). It is not enough for the employer to simply know that the employee was injured. *Id.* For example, in *Hume*, the employee, a garbage truck driver, had an injured hand. *Id.* He sought medical treatments for his hand, complained to his employer about the injury, and requested a job that would be "less stressful" on his hands. *Id.* However, he also submitted medical reports to his employer indicating that he

suffered from no medical conditions. *Id.* He eventually sued his employer, alleging failure to provide reasonable accommodations under the WLAD. *Id.* The trial court dismissed his claim after finding that he had not established a prima facie case of failure to accommodate, and the Washington State Supreme Court affirmed. *Id.* The Supreme Court held that there was insufficient evidence that the employer had notice of the disability because there was "no evidence that [the employee] specifically discussed the nature of his condition with his employer at the time he made the requests." *Id.*

The same is true in this case. Ms. Williams never specifically requested an accommodation or informed FedEx that she was disabled. In fact, like in *Hume*, she provided FedEx with a medical release from her doctor indicating that she could return to work "full duty with no restrictions." (Watson Decl. ¶ 16.) Ms. Williams contends that, notwithstanding her medical release, FedEx knew she had a serious medical condition that required accommodation. She presents barely any evidence to support this contention:[1]

- She testifies that she was in the FedEx office to "hang out" several times a week and would talk to other FedEx employees and management about her recovery. (Williams Decl. (Dkt. # 28-1) ¶ 3.) She also claims she used a walker and crutches at various times while she was in the office and a cane when she gave FedEx her medical release form. (*Id.* ¶ 4.)

- She testifies that she implicitly informed FedEx of her disability when she interviewed for the Dangerous Goods Agent position right before she was terminated. She claims she told her interviewer that she physically could not do the job and that she was limping and having "obvious difficulty managing stairs"

---

[1] In its reply brief, FedEx challenges much of the evidence that Ms. Williams does submit. (*See* Reply (Dkt. # 29).) The court finds it unnecessary to rule on FedEx's objections because, even considering all the evidence, the court grants summary judgment in FedEx's favor.

ORDER- 8

during the interview. (*Id.* ¶ 9.) The interviewer confirmed that Ms. Williams "indicated to [him] that she had concerns about walking and standing in various parts of the facility." (Wilhelme Decl. (Dkt. # 23) ¶ 11.)

- She asserts that, after she was terminated, she left a phone message with FedEx's human resources department that she could not physically do the job and that she felt like FedEx was not fighting for her. (Williams Decl. ¶ 10.)

This is all the evidence in the record to support Ms. Williams' claim that she notified FedEx of her disability.

Like in *Hume*, this evidence is insufficient to establish that FedEx was on notice of a "serious medical condition" that imposed physical limitations and required accommodation. The starting point for this analysis, just like in *Hume*, must be the medical release form Ms. Williams provided to FedEx indicating that she could return to work "full duty with no restrictions." (*See* Watson Decl. ¶ 16.) But even giving Ms. Williams the benefit of her assertion that FedEx should have known she was injured anyway, it is not enough for the employer to simply know that the employee is injured. *Hume*, 880 P.2d at 996. The employer must be aware of a "serious medical condition" at the time the employee seeks accommodation. *Id.* FedEx had no investigatory duty to question Ms. Williams regarding any disability it may have suspected she had. *See Goodman*, 899 P.2d at 1269. Instead, Ms. Williams had the burden of giving FedEx notice of her disability. *Id.* She did not meet this burden. Thus, even viewing the facts in the light most favorable to Ms. Williams and giving her the benefit of all reasonable inferences, there is insufficient evidence to support element (3) of a WLAD claim for failure to provide reasonable accommodation.

ORDER- 9

In any event, even if Ms. Williams could meet her burden of establishing a prima facie case of discrimination, FedEx easily carries its secondary burden of rebutting that inference. *See Domingo*, 98 P.3d at 1225. FedEx presents evidence that it had no notice of Ms. Williams' disability or its accompanying physical limitations:

- Ms. Williams gave FedEx a work release indicating that she could return to work with no restrictions. (Watson Decl. ¶ 16.)

- The human resources person overseeing Ms. Williams' leave, Laurie Watson (*see* Watson Dep. 16:24-17:13), testifies that she was never made aware that Ms. Williams would have any problems returning to work or that she had any limitations. (Watson Decl. ¶ 16; Williams Dep. (Dkt. # 17-1) at 59, 93-94.) Indeed, Ms. Watson testifies that Ms. Williams never told anyone at Fedex that she had any restrictions or limitations on her activities or that she felt she needed to be restricted in any activity. (Watson Decl. ¶ 25.)

- Ms. Watson advised Ms. Williams to contact her regarding possible accommodations for any position listed in the FedEx Career Opportunities bulletin, but Ms. Williams never did so despite Ms. Watson forwarding that bulletin to Ms. Williams on a weekly basis. (*Id.* ¶ 14.)

- Ms. Williams' only profferred physical limitation is that after her accident she was unable to run. (Williams Dep. at 169 ("Q: What disability did you believe you had as of March 23rd of 2009? A: A foot, my foot disability. Q: All right. What were you not able to do because of your foot? A: Run. Q: Anything else? A: That's it.").) Running is not a requirement of any job at FedEx and, indeed, is against FedEx safety rules. (Hansen Decl. ¶ 7; Wilhelme Decl. ¶ 13-14.)

- FedEx has a policy under which an employee released for work with restrictions will work with an HR person to determine whether the restrictions can be accommodated. (Watson Decl. ¶ 6.) FedEx also maintains a "Disabled Individuals Policy" and purports to take affirmative steps to employ and advance the employment of qualified disabled individuals. (Maszk Decl. (Dkt. # 21) ¶ 5.) Ms. Williams never asked to take advantage of any of these policies, nor did she request any accommodation following her release to return to work. (Watson Decl. ¶ 27.) She also did not ask whether any duty or function of any position could be altered or modified in any way. (*Id.*)

This evidence meets FedEx's secondary burden, shifting the burden back to Ms. Williams to show that FedEx's proffered reasons for not accommodating her disability are in fact pretexts for disability discrimination. *See Domingo*, 98 P.3d at 1225. Ms. Williams presents no evidence of pretext, direct or indirect.

Accordingly, the court GRANTS FedEx's motion for summary judgment with respect to Ms. Williams' WLAD claim for failure to reasonably accommodate her disability.

**D.     Wrongful Termination**

Next, FedEx moves for summary judgment with respect to Ms. Williams' claim for wrongful termination. Under the WLAD, an employer cannot terminate an employee for discriminatory reasons based on disability. RCW 49.60.180. To establish a prima facie case of discharge due to disability in violation of RCW 49.60.180, an employee must produce evidence that he or she (1) was disabled; (2) was discharged; (3) was doing satisfactory work; and (4) was replaced by someone who was not disabled. *Becker v. Cashman*, 114 P.3d 1210, 1214 (Wash. Ct. App. 2005). To survive summary judgment, the employee must show that a reasonable finder of fact could find that the employee's disability was a "substantial factor" motivating the employer's adverse actions. *Id.* at 1213. This is a burden of production, not persuasion, and may be proved through either direct or substantial evidence. *Id.*

For purposes of this motion, the court assumes Ms. Williams has established a prima facie case of employment discrimination. This shifts the burden of production to FedEx to produce a legitimate, nondiscriminatory reason for the employee's discharge.

1  *Id.* at 1214. A "nondiscriminatory reason" is a reason that "disclaims any reliance on the
2  employee's disability in having taken the employment action." *Cf. Mustafa v. Clark Cty.*
3  *Sch. Dist.*, 157 F.3d 1169, 1175-76 (9th Cir. 1998) (applying federal law); *Dark v. Curry*
4  *Cty.*, 451 F.3d 1078, 1084 (9th Cir. 2006) (applying Oregon law). In making this
5  determination, the "ultimate question is whether the [disability] was the reason for the
6  termination." *Cluff v. CMX Corp., Inc.*, 929 P.2d 1136, 1138 (Wash. Ct. App. 1997).
7         FedEx provides a legitimate nondiscriminatory reason for terminating Ms.
8  Williams and a substantial amount of evidence to support it. FedEx asserts that it
9  terminated Ms. Williams in accordance with company policy because her "medical leave
10 of absence exceeded 90 days and her position was replaced due to operational necessity."
11 (Maszk Decl. ¶ 9.) Indeed, under FedEx's medical leave policy, management may fill the
12 position of an on-leave employee after the employee's medical leave exceeds 90 days and
13 if operational need so dictates. (Watson Decl. ¶ 5.) FedEx must notify the employee of
14 this fact after 90 days of leave elapses, and here FedEx did so. (*Id.*; Williams Dep. at 40-
15 41.) When an employee is released to return to work without restrictions and her former
16 position is no longer available, she is given 90 days or until the maximum duration of
17 leave expires (whichever is shorter) to apply for open positions within FedEx. (Watson
18 Decl. ¶ 6.) If the employee does not find another position, the employee is terminated.
19 (*Id.* ¶ 8.) This is exactly what happened to Ms. Williams and, indeed, Ms. Williams does
20 not dispute FedEx's version of events with respect to the timing of her termination and
21 the extent of her leave.
22

Further, FedEx provides additional evidence to support its proffered nondiscriminatory reason and, more generally, to demonstrate that it did not terminate Ms. Williams because of her disability:

- FedEx asserts that it would not make sense to fire Ms. Williams because of her disability. Ms. Williams' only proffered physical limitation is that after her accident she was unable to run. (Williams Dep. at 169 ("Q: What disability did you believe you had as of March 23rd of 2009? A: A foot, my foot disability. Q: All right. What were you not able to do because of your foot? A: Run. Q: Anything else? A: That's it.").) Running is not a requirement of any job at FedEx and, indeed, is against FedEx safety rules. (Hansen Decl. ¶ 7; Wilhelme Decl. ¶ 13-14.)

- Ms. Williams did not take advantage of internal processes and policies for contesting her termination. FedEx has a "Guaranteed Fair Treatment Procedure Complaint Process" that gives employees a mechanism for challenging employment actions, including termination, and provides three levels of review. (Maszk Decl. ¶ 6.) Employee may also file an internal Equal Employment Opportunity ("EEO") complaint. (*Id.*) Ms. Williams never filed a Guaranteed Fair Treament Complaint or an internal EEO complaint regarding her termination, although she knew about the grievance procedure because she had utilized it before. (Maszk Decl. ¶ 7.)

- Ms. Williams never notified FedEx that she believed her termination was discriminatory or unlawful. (Maszk Decl. ¶ 7.) Further, although Ms. Williams was advised of all relevant policies, she never took issue with the fact that her position could be replaced based on operational need. (Watson Decl. ¶¶ 11-12.)

The court concludes that FedEx has met its burden to produce a legitimate, nondiscriminatory reason for terminating Ms. Williams that "disclaims any reliance on the employee's disability in having taken the employment action." *Mustafa*, 157 F.3d at 1175-76; *Snapp v. Burlington N. Santa Fe Ry.*, No. 10-CV-05577-RBL, 2012 WL 3157137, at *3-4 (W.D. Wash. Aug. 3, 2012) (finding that exhaustion of medical leave and failure to secure another position within the company—followed by termination according to policy—was a legitimate, nondiscriminatory reason for termination); *Davis*

ORDER- 13

*v. Boeing Co.*, No. C11-1033-JCC, 2012 WL 5248752, at *6 (W.D. Wash. Oct. 23, 2012) (finding that exhaustion of 30-month medical leave policy was a legitimate, nondiscriminatory reason for termination); *see also Grantz v. State Farm Mut. Auto. Ins. Co.*, 420 Fed. Appx. 692, 695 (9th Cir. 2011).

Once the employer offers a legitimate, nondiscriminatory reason for discharging the employee, the burden shifts back to the employee to demonstrate that the articulated reason is a pretext for disability discrimination. *Collings v. Longview Fibre Co.*, 63 F.3d 828, 833 (9th Cir. 1995). The employee can make this showing "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (citing *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000)). If the employee relies on circumstantial evidence to show pretext, that evidence must be "both specific and substantial." *Id.* (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998)).

Ms. Williams produces very little evidence of pretext, and what she does produce is circumstantial. First, Ms. Williams testifies that she told Ms. Watson, the person assigned to manage her medical leave, that she felt like FedEx was trying to get rid of her, and that Ms. Watson said "that very well may be." (Williams Decl. ¶ 5.) She also testifies that she told other people about this conversation. *Id.* Second, Ms. Williams argues that notice of a disability can give rise to evidence that the disability played a role in the adverse employment decision. (Resp. at 13.) However, as discussed above, FedEx

ORDER- 14

did not have notice that Ms. Williams had a disability. Thus, the only evidence of pretext Ms. Williams presents is her assertion that Ms. Watson said it "very well may be" that FedEx is trying to get rid of her. This is not direct evidence of pretext. Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption. *Coghlan v. Am. Seafoods Co., LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005) (citing *Godwin*, 150 F.3d at 1221). Direct evidence usually consists of "clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Id.* Ms. Watson's alleged statement does not rise to this level; it is not clearly discriminatory and can only be classified as such with the aid of inferences and presumptions.

Nor is Ms. Watson's alleged statement "specific and substantial" circumstantial evidence of pretext or discriminatory motive. *See Villiarimo*, 281 F.3d at 1062. Even viewing all facts and reasonable inferences in the light most favorable to Ms. Williams, *see Scott*, 550 U.S. at 378, Ms. Watson's alleged statement does not demonstrate discriminatory motive or that the employer's proffered explanation is unworthy of credence, *see Villiarimo*, 281 F.3d at 1062. This is because the statement does nothing to show that FedEx terminated Ms. Williams because of her disability. The WLAD does not prevent employers from "getting rid of" their employees. Indeed, Washington is an at-will employment state. *Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1084 (Wash. 1984). The WLAD only prohibits employers from "getting rid of" their employees for discriminatory reasons, and Ms. Williams has not presented "specific and substantial" circumstantial evidence that FedEx's reasons for terminating her were discriminatory.

ORDER- 15

Accordingly, the court GRANTS FedEx's motion for summary judgment with respect to her wrongful termination claim.

**E.     Ms. Williams' Unpleaded Claims**

Ms. Williams advances several additional theories of recovery in her response to FedEx's motion for summary judgment. None of these theories were pleaded in her Complaint, which asserts causes of action only for failure to accommodate and wrongful termination. (*See* Compl. ¶¶ 4.1-5.2.) For example, she claims that she was promised she could get her old job back when she recovered from her injuries (Resp. at 4), but her Complaint does not include claims for breach of contract or misrepresentation (*see* Compl. ¶¶ 4.1-5.2). She also advances theories of discrimination that rely on adverse employment actions other than wrongful termination—FedEx denying her an available position as a swing driver (Resp at 11-12), FedEx "not fighting for her" (*Id.* at 7), FedEx telling her she had to be released full duty without restrictions if she wanted to apply for her old job (*Id.* at 5), and FedEx not "creating a job" for her (*id.* at 7). She did not plead any of these theories in her Complaint either. (*See* Compl. ¶¶ 4.1-5.2.)

Nor can her Complaint be construed to include them. Her wrongful termination claim is pleaded narrowly to include only discrimination based on "termination":

> **V. FOURTH[2] CAUSE OF ACTION:**
> **WRONGFUL TERMINATION**
> 5.1   Plaintiff re-alleges the allegations contained in paragraphs 3.1 through 3.4.
> 5.2   Defendants' termination of plaintiff was wrongful.

---

[2] There are only two causes of action pleaded in the Complaint. (*See* Compl. ¶¶ 4.1-5.2.) The label "fourth cause of action" appears to be a mistake.

(Compl. ¶¶ 5.1-5.2.) Her failure to accommodate claim is equally narrow, simply re-alleging the earlier-stated allegations and claiming that "Defendants failed to reasonably accommodate plaintiff's disability." (*Id.* ¶¶ 4.1-4.2.) It is not plausible to construe either of these claims as including a claim for discrimination based on an adverse employment action other than termination or failure to accommodate. Indeed, Ms. Williams never makes this argument, nor does she formally assert these new claims; she simply argues them as if they were pleaded in her complaint.

Ms. Williams may not assert new causes of action or theories of recovery for the first time in her opposition to FedEx's motion for summary judgment. *McNeely v. Cty. of Sacramento*, 344 Fed. Appx. 317, 319 (9th Cir. 2009). In, *McNeely*, the Ninth Circuit held that Mr. McNeely—a section 1983 plaintiff—waived his potential *Monell* claim by raising it for the first time in an opposition to the defendants' motion for summary judgment. *Id.* The Ninth Circuit held that he waived his *Monell* claim because "he failed to plead this claim or anything like it in either of his complaints. The claim was presented for the first time as an argument in opposition to the county's motion for summary judgment." *Id*. The same is true here, as discussed above: Ms. Williams raises her new claims and theories of recovery for the first time in response to FedEx's summary judgment motion. She did not plead any of them. Thus, just like in *McNeely*, she may not assert them now.

Even if the court were to construe Ms. Williams' arguments liberally as a motion to amend her Complaint, the court would deny that motion. At this stage of the litigaiton,

ORDER- 17

a motion to amend would be decided under a "good cause" standard. Ordinarily, a party seeking to amend pleadings must proceed under Rule 15, and federal policy favors freely allowing amendment so that cases may be decided on their merits. *See Martinez v. Newport Beach City*, 125 F.3d 777, 785 (9th Cir. 1997). However, where a case scheduling order sets a deadline for amending pleadings and that deadline has passed, as is the case here, a party can only amend its pleadings on a showing of good cause under Rule 16(b)(4). *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). To determine whether good cause exists, the court primarily examines the diligence of the party seeking to amend. *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992).

Ms. Williams has not been diligent in moving to amend, so there is not good cause to amend the scheduling order. The parties completed discovery in this action on February 17, 2013; Ms. Williams has had all the facts she needed to move to amend for quite some time. (*See* 11/19/12 Order (Dkt. # 14) at 1.) She has not done so even now, nor has she made any other effort to assert her new claims other than including references to them in her response to FedEx's motion for summary judgment. (*See generally* Dkt.) Further, seven months have elapsed since the deadline for amending pleadings and Ms. Williams has made no other attempt to assert these new causes of action. (*See id.*; Sched. Order (Dkt. # 12).) Thus, even if Ms. Williams had properly filed a motion to amend, the court would deny it and disregard her newly-asserted causes of action anyway.

ORDER- 18

### III. CONCLUSION

For the foregoing reasons, the court GRANTS FedEx's motion for summary judgment (Dkt. # 16).

Dated this 22nd day of May, 2013.

*[signature]*

JAMES L. ROBART
United States District Judge